In the Matter of the Estate of John W. Shear, Deceased.

Surrogate's Court, Broome County, October 22, 1935.

*Frank M. Hays,* for the trustee.

*Robert O. Brink,* for Ralph E. Shear and Mildred Larrabee, remaindermen.

*Clarence L. Chamberlain* special guardian for Hazel Shear, an alleged incompetent.

BAKER, S. This is an application for construction of certain portions of the will of John W. Shear, deceased.

The office of the court in any proceeding for testamentary construction is two-fold, as was pointed out in *Matter of Costello* (147 Misc. 629). The primary object in such a proceeding is to ascertain the intention of testator, and when this has been determined the court must adjudicate the legal effect and consequences of the directions as there interpreted. The testator, not the court, must make a disposition of his property. All the latter can do is, so far as legal rules permit, to effectuate the disposition which the testator has directed. It cannot make a new and valid will for him if he has failed in this respect, nor can it exercise its own judgment as to the justness or fairness of the provisions of the instrument. (*Herzog* v.

*Title Guarantee & Trust Co.*, 177 N. Y. 86, 91, 92; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33; *Weeks* v. *Cornwell*, 104 id. 325; *Tilden* v. *Green*, 130 id. 29; *Riker* v. *Gwynne*, 201 id. 143.)

In the performance of the office of adjudicating legality of testator's directions for the disposal of his property, precedents are of the utmost importance. On the primary question of what disposition the testator actually intended, in other words, in the judicial act of the interpretation of the meaning of the phraseology used in the testamentary instrument, the citation of authorities is of very little use. " It has been justly observed by some jurist possessed of philosophical perception ' that no will has a twin brother.' This sage epigram points directly at the difficulties encountered by courts in trying to construe wills in the light of authority." (*Matter of King*, 200 N. Y. 189, 192.)

Another frequently encountered stumbling block in this connection is concealed in the phrase " the intention of the testator." This does not refer to what he might have desired to accomplish in the light of eventualities which have transpired since the execution of the will. The only intent relevant or important is as to the disposition of his property, which the testator had in mind at the precise moment of his signature of the will which is the subject-matter of the construction.

" In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. Canons of construction may aid us. Based as they are upon general considerations; upon guesses as to what the average man would intend by this expression or by that, we rest upon them in the absence of more certain indications. Slight variations of phrase, however, or differences in arrangement may lead us to opposite results." (*Matter of Bump*, 234 N. Y. 60, 63.)

In each case involving the construction of a will resort must, in the final analysis, be had to the first primary principle that the aim of the court is to determine the intention of the testator, and if such intention can be discovered it is paramount (*Matter of Buttner*, 243 N. Y. 1), and it will not be affected by any rule of construction. (*Matter of Rooker*, 248 N. Y. 361.)

The courts are limited to the words which testator has himself used in the will (*Matter of Durand*, 250 N. Y. 45), but if there is any ambiguity, that construction should be adopted which will best carry testator's intention into effect. (*Matter of Buechner*, 226 N. Y. 440.)

The circumstances and conditions surrounding the testator at the time of the execution of his will may be taken into consideration as bearing upon his intent. (*Matter of Rossiter*, 134 Misc. 837, 840;

affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann*, 137 Misc. 113, 114; affd., 232 App. Div. 698; *Matter of Donovan*, 153 Misc. 593; affd., 243 App. Div. 597.)

As hereinbefore stated, when the court has found what disposition of his property the testator actually intended to make, though " the search for intention is often a search after a phantom," it is then for the court to determine whether such intended provisions are valid or otherwise. (*Colton* v. *Fox*, 67 N. Y. 348, 351; *Herzog* v. *Title Guarantee & Trust Co., supra; Central Trust Co.* v. *Egleston, supra.*)

At the time of the execution of the will of the testator, March 20, 1913, and at the time of his death, April 28, 1913, his direct family consisted of his wife, his daughter, Etha May Skinner, his granddaughters, Hazel Shear and Mildred Shear, and his grandson, Ralph E. Shear, the three persons last named being children of a deceased son of testator.

The record discloses that prior to testator's death, and for some period afterwards, his three grandchildren with two of their aunts occupied the lower suite of rooms of the premises known as No. 21 Abbott street, Binghamton, N. Y. It also appears from the record that at the time testator executed his will, and at the time of his death, his granddaughter Hazel Shear was a confirmed invalid, had never walked in her life, was confined to her bed in a child's bedroom, and had never developed either physically or mentally. Under such circumstances the testator executed his will.

Testator's will was duly admitted to probate in the Surrogate's Court of Broome county on the 31st day of July, 1913.

Saphrona Shear, the widow, died on March 8, 1919. Etha May Skinner, as trustee, executed a bond and mortgage against the said real property in the principal sum of $1,000, bearing date September 28, 1919, and which remains unpaid, and it appears from the record that the proceeds of said bond and mortgage were used solely for the care of Hazel Shear. April 11, 1922, the trustee entered into a contract for the sale of the said real property. All payments due under the contract have been made, except one, and the person now interested therein is desirous of making such final payment and obtain a deed of conveyance of said real property.

With this background of facts the paragraphs of the instant will pertinent in this proceeding for construction must next be examined.

" *Second.* I give to my wife Saphrona Shear, the use of the property located at and known as 21 Abbott st, Binghamton, N. Y., so long as she may live, and after her death, the said Abbott st property to be held in trust for the support and maintenance of my granddaughter Hazel Shear, so long as she may live, or need such

support; and upon her death, the said property, or what remains of it, to go to the surviving children of Sherman Shear, deceased.

"*Third.* It is my will that my daughter, Etha May Skinner, shall act as the trustee of this trust fund, to administer, and use, for the comfort of this child as she thinks best; and it is my further will that my said daughter, Etha May Skinner, shall not be required to give any bonds, as trustee, to the Judge of probate for the faithful execution of the duties of trustee."

What was the intention of the testator in view of the language used, and in the light of the circumstances surrounding him? It is clear that he intended his wife to have the life use of the property known as No. 21 Abbott street, Binghamton, N. Y. That cannot be questioned. Upon her death, testator's primary and dominant purpose, as appears in his will, was to provide for the support and care of his granddaughter, Hazel Shear, so long as she lived, or needed such support, and to carry out such intention, he directed that the said real property be held in trust by his daughter, Etha May Skinner, she being charged with the duty of administering and using the said property as, in her judgment, would be for the comfort of the said granddaughter.

In the second paragraph of the will, testator's gift of the real property, "*or what remains of it,*" to the surviving children of Sherman Shear, deceased, living at the time when the gift was to take effect, clearly indicates they were to receive only that portion remaining, if any, of the property not needed for the support and care of Hazel Shear.

It seems clear, therefore, that testator's purpose and intention, as expressed in the instant will, was to devote all of the said real property, if necessary, to the support and care of his said granddaughter, and that he has by the language used and in the general scheme of this will, raised an implied power of sale of said real property in order to accomplish such purpose and intention.

In my opinion, a valid express trust for the benefit of Hazel Shear is created under the provisions of the second and third paragraphs of the instant will. (Real Prop. Law, § 96; *Leggett* v. *Perkins,* 2 N. Y. 297; *Brewster* v. *Striker,* Id. 19; *Belmont* v. *O'Brien,* 12 id. 394; *Tobias* v. *Ketchum,* 32 id. 319; *Vernon* v. *Vernon,* 53 id. 351; *Chamberlain* v. *Taylor,* 105 id. 185; *Mee* v. *Gordon,* 187 id. 400; *Close* v. *Farmers' Loan & Trust Co.,* 195 id. 92; *Hubbard* v. *Housley,* 43 App. Div. 129; *Morss* v. *Allin,* 181 id. 79.) Even if the provisions of the will were to be construed as creating a valid power in trust (Real Prop. Law, § 99), instead of a trust estate, the result would be the same, as in the will at bar there would be little or no real difference in substance or effect between a power in trust, and

a trust estate, as the direction in this will that the said Etha May Skinner act as trustee, and *administer and use* the fund for the benefit of Hazel Shear could be executed by the creation of a mere power in trust. (*Heermans* v. *Burt*, 78 N. Y. 259; *Cooke* v. *Platt*, 98 id. 35; *Tilden* v. *Green*, *supra;* *Murray* v. *Miller*, 178 id. 316.)

I hold and determine that a valid power of sale of the real property must be implied in the trustee to give effect to the directions contained in the second and third paragraphs of the instant will for the benefit of Hazel Shear.

In *Salisbury* v. *Slade* (160 N. Y. 278) the Court of Appeals says (at p. 289): "This general principle is clearly established by the authorities, that the power of sale need not be express, but may be implied when it is evident from an examination of the entire will that otherwise the testamentary scheme would be defeated."

*Cahill* v. *Russell* (140 N. Y. 402) contains the following language (at p. 406): "Formal words are not necessary to create a power and, to quote the language of Sugden, 'However obscurely in a will the intention may be expressed, yet if it appears that a power of sale was intended, a sale will be supported.' (8th ed., p. 425, § 7.)"

To like effect see *Mee* v. *Gordon* (*supra*); *Van Winkle* v. *Fowler* (52 Hun, 355); *Boehmcke* v. *McKeon* (119 App. Div. 30, 31).

I further hold and determine that a valid power to mortgage the real property must also be implied in the trustee to accomplish the performance of the trust herein. (*Rogers* v. *Rogers*, 111 N. Y. 228.)

Enter decree on five days' notice construing the will accordingly.